Page number 13, section 91. CY v. Lakeview Public Schools et al. Oral argument must be reviewed with the opinion of Supervisors for the appellate. Page number 13, section 91. CY v. Lakeview Public Schools et al. Oral argument must be reviewed with the opinion of Supervisors for the appellate. Good morning. May it please the Court, my name is Jeffrey Weed. I represent the Plaintiff Appellant, the minor child CY. I know that the Court has had an opportunity to review the extensive briefing here, and I really only have a couple of points that I'd like to address today. And for that reason... So what about this? I mean, we live in a somewhat terrifying world, I guess I would say, including in schools. Let's forget whether there was a knife there. Let's not even get into that. Just why is email or text or that communication not enough to justify everything that happened afterwards? And, you know, whether it's the brother getting to actually testify live or submit the statement in writing, I must tell you, I'm having a hard time getting over that. So at least for me, that's really helped me not be so preoccupied with it. I agree with you completely. The substance of the text message in question is regrettable to say the least. At the same time, I also agree with you, we do live in an increasingly frightening world. That text message, or tweet rather, I don't stay up on the social media as I should, is not a threat aimed particularly at any student, let alone, as upsetting as the language may be... I don't even care. I'm not even bothered by that. Why does it have to be directed at a particular person? You say, stab, stab, stab, going to stab, stab, stab you today to see your insides. Yeah, yeah, yeah. End of case, it seems to me. What's the matter with that? Except, Your Honor, under the point, one of the points that I'd like to make is that the picture of due process that's been painted here in the school setting is this rigid set, this rigid construct. But the actual underpinning test, if you look at any of the cases, the school discipline cases that the defendants have cited in their brief, there's always, or in the vast majority, and certainly in Goss v. Lopez, there's a discussion of that three-pronged balancing test in Matthews v. Eldridge. And frankly, I apologize to the Court. I feel I probably could have done a better job in briefing that portion of the case, both below and here. But... I doubt it. I doubt it. Well, thank you. I appreciate that. I mean, you got this tweet, and it says these things. Where is there a case? I mean, I can't imagine. Well, what happened to this school district had they not done exactly what they did? I mean, all hell would have broken loose. Here's the disconnect as far as I'm concerned with the case. There's a difference, and I think it is an inherent quality of our whole system of jurisprudence. There's an inherent disconnect between guilt and absolute certainty of guilt and process. But she never... That's right. But that's part of the problem. She never denies this is her tweet. It is correct that she did. There's a written statement from my client admitting that she made the tweeting question. But I'll also say there's no assertion by the defendants in the record below that on the basis of that tweet alone, she was submitted. Their contention, or she was first suspended and later expelled, their contention has always been, and in the briefs on appeal continues to be, that the reason she was suspended and expelled was for bringing a knife to school and threatening to stab another student with it. They've never contended that it was the tweet that was the basis for that action.  Wait, wait, wait. It's wrapped up in it. Well, my contention would be applying some sort of a harmless error type standard to a case like this. So you think the case comes out differently in terms of suspension, expulsion, if lots and lots of due process clarify there was no actual knife? Well, I think that the case, the eventual expulsion and suspension, aren't actually the deprivation that's at bar. It's the lack of process itself that's actionable. It's the fact that, for instance, in our criminal courts, we can have video surveillance, confession, you can have any number of evidence demonstrating that someone is stone cold guilty, and yet we still afford them process. It's a fundamental underpinning. When we bring a process claim, we also demand, if you can show a process problem, that there was prejudice. You don't have process victories in the abstract. You have process victories connected to some prejudice to the individual. And I do understand that here. I would argue that the prejudice that was suffered by my client was the fact that she was not afforded the process she was due legally. That's a bit of a bootstrap, isn't it? Well, the point that I would like to call to the court's attention is, as I made clear in the briefs, there are two different deprivations that we complain of here. There's the suspension. The defendants have hammered away, as well they should. As the father of two daughters myself, I agree. School safety is a compelling governmental interest. Under Matthews v. Eldridge, and I'll be forthright and admit, as between the two deprivations, the suspension stage is by far the weaker claim. However, that same governmental rationale, under that three-pronged balancing test, first of all, the private interest that's at stake here is the worst possible deprivation that's available in a school discipline case. This is the death penalty of school discipline. It is a permanent, unappealable expulsion. I think I'd use that phrase, stab, stab, stab setting. And I can see where you're going with that, but at the same time, this is the worst deprivation the school board had at its disposal. But even if you go to your process claim, it seems to me that this student got all the process she was entitled to under GAS. She knew what the charges are. There's no case that says she gets to read the actual statement. There's no case that says she actually gets to know the name of the accuser for obvious reasons in a school setting. She has the right to a hearing. She got a hearing. There's no right under the case law to say that she has to be told she gets an attorney or that she gets to appeal. It just seems to me that you're taking GAS and you're reading all kinds of due process basic requirements that apply in a traditional out-of-school setting. You're reading that into GAS, and I can't find any authority for that. Well, the response I have to that is that, first of all, many of the citations and the defendants, in my analysis of the law, due process, and GAS has an extensive analysis of this, it is a flexible, moving standard. It is that balancing test, and it differs. The process that's due is informed by the deprivation. It's informed. And so the defendants cite cases like Flame v. Medical College of Ohio. So here you have a professional school student being dismissed for largely academic reasons, and they say, well, that's controlling authority in this case. What is your best argument in terms of the lack of due process of the various claims that you make? The best argument, in my mind... Say it another way. What's the worst thing that they did or failed to do? The worst thing is clearly the expulsion process. And in my mind, the primary thing I would ask this court to do in its deliberations... What's the worst thing that happened after she sends the tweet to the fact the school board says you're out of here? The school board repeatedly, and we have record evidence to support all of this, the school board repeatedly, the superintendent repeatedly, told the family, my client, they would all be permitted to attend the hearing. They would all be permitted to speak at the hearing. So this is the issue on the brother? Yes. That's the only person that was allegedly excluded that should have been included? And also an open hearing. And by the way, there is... Who asked for a closed hearing? Now, that is true. At the recommendation of the superintendent, after meeting with the superintendent, the superintendent recommended to the family, you know what, given the history here, I think it would be in your best interest to request a closed hearing. He subsequently wrote a letter to the family saying, we've looked at our policies, and this is in the record, you can't have a closed hearing. This is going to be an open public hearing. And in any event, when he, again, this is in the affidavits, when he told them about this idea of the closed hearing, it was still with the promise, but don't worry. You can all still attend. You can all speak. So which is it? That it should have been an open hearing? You want the public to be sitting in on this? That's unimaginable to me. But is it that, or is it that the brother should have been there? It's the fact that, in the end, the end analysis here, in my mind, of this case, is that the court below accepted the defendant's definition of due process in the school discipline setting, which is some kind of notice and some kind of hearing. I just want to know your best claim. And apparently it's the nature of the school board hearing, not the stuff that happened before that. That's your best claim? That's correct. And it should have been an open hearing, right? I'm less concerned. And how are you prejudiced by the fact that you didn't have all the members of the PTA there railing against this, your own client? I'm less concerned with the open hearing aspect of it than I am with the fact that the procedural rules had been made clear to my client and her family, and literally at the very last moment before the hearing, the school board pulls the rug out from underneath them. I think it's also important to note they did have a right to have counsel. All of these are generalities, so it's the brother. It is. It's the brother. So we know two things about the brother. We know the brother wanted to read a statement. He wasn't able to do that, but the statement was read. That's correct. And supposedly the brother might have been offering exculpatory evidence, but the only evidence that he had is he didn't see a knife when he picked her up from school. So how on earth can that be a procedural due process violation? Or even if it is, how can it not be harmless error when he doesn't even come forward to say what he would have said, and at best he would have said he didn't see a knife, which has nothing to do with whether she actually had a knife? Worse still, though, than that is the fact that is explained in the affidavits in the brief, the fact that the family explained to the school district who had promised that this young man, who is much older, college-educated, the best-spoken individual in the family, that he had prepared their case, he had written the statement, he was the person that was there acting as her representative. And she did, pursuant to the school board's own policy, she had a right to counsel. I see that my time has expired. If I could just finish answering your question. Yeah, absolutely. She did have a right to counsel, pursuant to school board policy. They had promised that he would be able to attend, and at the very last moment they say, no, he can't, it's not going to be open session, it's going to be closed session. And there is Sixth Circuit precedent. My sense in reading this is that he would have been a more articulate spokesperson for the family than the family was themselves. Is that what this distills down to? Oh, far more so. And it also is the fact that that minimal time period of notice, literally informing the family of this when they showed up to the hearing, gave them absolutely no opportunity to prepare in any other way. What's the argument they would have made with more time? Well, and that's the thing. Conveniently for the defendants, they say, well, we don't know what would have happened, and that's true. We don't know what would have happened if the brother had been allowed to attend, and we never will. I'm just saying, with more time or the brother attending as opposed to submitting a written statement, what's the added information that would have come out? Well, the added information, again, at this point, we're not certain what that would have been. Okay, I think we got your argument. You'll get your full rebuttal. We'll hear from Mr. is it pronounced Chappie or Chappie? Chappie. Okay. Good morning, Your Honors. My name is Ken Chappie. I'm appearing on behalf of the school district and its employees. I'll be very brief. I think the issues are pretty clear in this case. To make clear, the brother had testified twice in two previous hearings to the superintendent and to the assistant principal. It is contained in the mother's affidavit at paragraphs 8 and 11, which is on page ID 405. In those two paragraphs, the mother states that the plaintiff, the mother, and the brother all explained their side to the assistant principal, then the superintendent, and the second opportunity before the superintendent, they were informed in writing twice that expulsion was on the table. The plaintiff hasn't identified what additional information he would have provided had he been there at the expulsion hearing other than to read the statement. There would have been no additional exculpatory evidence to help out the plaintiff. There was no harm from this. There's no due process violation. One other thing I wanted to make. Am I right in recalling that the claim before the district court was that he would have been able to read the statement more and he would have gone beyond the statement and said other things? Am I recalling that correctly? Yeah, I think that is right, that he would have just been able to read the statement in a more clear manner, and that was it. There wasn't anything additional that he would have added to the testimony. At least as the issue was framed at the district court. Correct. All right. The other thing that needs to be made clear is the punishment that she received. It's not a huge deal, but just for the sake of accuracy, when the plaintiff is expelled on March 6th, all that means under the Michigan school code is she cannot continue her public education at that particular school building. She is still entitled to continue her public education at a Michigan school. In fact, on March 8th, the superintendent sent the plaintiff a letter outlining her rights to continue her education at an alternative education high school. Expulsion under the Michigan school code means 180-day suspension, that's all, and the right to immediately continue her education. That's it. All right. Thank you very much. Thank you very much. Appreciate your argument. Mr. Weed, do you want any rebuttal? Am I right that at the district court the issue with the brother was only whether he could have read it better, not what else he might have said? No, that's not correct. It's one of the things that the defendants state as undisputed in their brief. If I read your briefs at the district court, you complained about not being able to read it and not being able to otherwise assist? Exactly. Okay, that's fine. He was the most able advocate. That's fine. We'll go look at it. And so there's that point. The final thing that I would like to just bring to the court's attention is that the version of due process that this court is being asked to uphold here, that the defendants have spelled out, that some kind of notice and some kind of hearing, that argument, in my mind, is remarkable in its breadth, and it's synonymous with any kind of notice and any kind of hearing, even if it's a very severe deprivation in school discipline. And so what I would ask is that the court, in reviewing the expulsion proceedings particularly, ask what was the governmental interest? Why was it necessary to exclude the brother? What was there, other than maybe five or ten minutes of their time, why couldn't they allow him to attend the hearing? There hasn't been a rationale offered. And finally, this actually is sort of aside from the arguments of the merits today. In preparing for oral arguments today, it came to my attention that in the court below and also in this court, not in the pleadings themselves but in several exhibits, primarily in the defendants' exhibits but also in exhibits submitted by the plaintiff, there are minor children's names that were not properly redacted. And so I would ask this court, and if the court would like me to draft a written motion and submit it, I certainly will, but whatever order this court... Are you concerned about the opinion, our opinion? Not so much the opinion but in terms of sealing those exhibits because they haven't been redacted. It's not just parties, it's also non-party names of minors. And I apologize. I don't know how that occurred in the court below, but it's on both sides. Thank you for identifying this. Why don't you talk to your counsel, the friend on the other side, and if you guys want to submit something, we'll look at it. All right? Thank you very much. Thanks to both of you for your briefs and helpful oral arguments. We greatly appreciate it. And the case will be submitted and the clerk may call the last case.